IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SAMUEL CARTER, #A0247045,<br><br>        Plaintiff,<br><br>  vs.<br><br>BANK OF HAWAII PRESIDENT, *et al*.,<br><br>        Defendants. | CIVIL NO. 23-00215 DKW-KJM<br><br>ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT WITH LEAVE TO AMEND |

Before the Court is pro se Plaintiff Samuel Carter's Prisoner Civil Rights Complaint brought pursuant to 42 U.S.C. § 1983.[1]  ECF No. 1.  In the Complaint, Carter alleges that three Bank of Hawaii employees violated his equal protection and due process rights by failing to send him a $200 cashier's check.[2]  *Id.* at 5–6.  After conducting the required screening pursuant to 28 U.S.C. § 1915(e)(2), the Court DISMISSES the Complaint with leave to amend.  If Carter wants this action to proceed, he must file an amended pleading that cures the noted deficiencies in his claims on or before June 12, 2023.  In the alternative, Carter may inform the

---

[1]Carter is currently incarcerated at the Oahu Community Correctional Center.  *See* ECF No. 1 at PageID.1; *see also* VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A0247045"; and select "Search") (last visited May 19, 2023).

[2]Carter names Defendants "Bank of Hawaii President," Branch Manager Kristi Kuwada, and "Lynda BSSG388" in their individual and official capacities.  ECF No. 1 at 1–2.

Court in writing on or before June 12, 2023 that he would like to voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), in which case such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).

## I. STATUTORY SCREENING

The Court must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, or in which a plaintiff proceeds in forma pauperis.  28 U.S.C. §§ 1915(e)(2), 1915A(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007) ("Among other reforms, the [Prison Litigation Reform Act of 1995] mandates early judicial screening of prisoner complaints."). During this screening, the Court must dismiss any complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks damages from defendants who are immune from suit.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Harris v. Mangum*, 863 F.3d 1133, 1137 (9th Cir. 2017); *see also Harris v. Harris*, 935 F.3d 670, 675 (9th Cir. 2019) (describing screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b)).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  **BACKGROUND**[3]

On October 1, 2022, Carter wrote a letter to Bank of Hawaii requesting $200 from his savings account.  ECF No. 1 at 5.  On November 15, 2022, Carter called the bank and spoke with Defendant Lynda.  *Id.*  Carter asked Lynda to send him a $200 cashier's check payable to Tony Johnson—that is, Carter's alias.  *Id.*

On December 15, 2022, Carter received a notice stating that a cashier's check had been returned to Bank of Hawaii because the name on the check did not match the name associated with Carter's inmate identification number.  *Id.*  Carter

---

[3]Carter's factual allegations are accepted as true for purposes of screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

subsequently sent four letters to Bank of Hawaii requesting a cashier's check, but he received no response to those letters. *Id.*

On May 1, 2023, Carter spoke on the telephone with Defendant Kuwada. *Id.* Kuwada told Carter that a case manager must verify Carter's identity before the bank will issue a cashier's check. *Id.* According to Carter, other inmates have obtained money from their Bank of Hawaii accounts after verifying their identity over the phone. *Id.* Carter alleges that his treatment by the bank employees is "no more than racial discrimination." *Id.*

Carter signed the Complaint on May 5, 2023, and the Court received it on May 17, 2023. *Id.* at 8. Carter alleges that Defendants' actions violated his equal protection and due process rights. *Id.* at 5–6. Carter seeks more than $100,000 in damages. *Id.* at 8.

### III.  DISCUSSION

**A.    Legal Framework for Claims under 42 U.S.C. § 1983**

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'" *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting 42 U.S.C. § 1983) (alteration in original). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed

4

by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

**B.     Acting Under Color of State Law**

Carter alleges that three Bank of Hawaii employees violated his equal protection and due process rights by failing to send him a $200 cashier's check. ECF No. 1 at 5–6. Carter has not alleged, however, facts showing that any defendant acted under color of state law.

Section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *see also Price v. State of Hawaii*, 939 F.2d 702, 707–08 (9th Cir. 1991) ("[P]rivate parties are not generally acting under color of state law."); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) ("When addressing whether a private party acted under color of law, [courts] . . . start with the presumption that private conduct does not constitute governmental action." (citations omitted)). "Although § 1983 makes liable only those who act 'under color of' state law, even a private [actor] can, in certain circumstances, be subject to liability under section 1983." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (internal quotation marks and citation omitted).

What is fairly attributable as state action "is a matter of normative judgment, and the criteria lack rigid simplicity . . . . [N]o one fact can function as a

necessary condition across the board . . . nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96 (2001). "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

Courts use a "two-prong inquiry to determine whether . . . a private actor . . . engaged in state action to qualify as a state actor under § 1983." *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1121 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 749 (2023). The private actor must satisfy both (1) the state policy requirement, and (2) the state actor requirement. *Id.* (citation omitted); *see Sullivan*, 526 U.S. at 50.

Under the state policy requirement, the alleged deprivation "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). This requirement "ensures that the alleged deprivation is fairly attributable to a state policy." *Wright,* 48 F.4th at 1121–22; *Moghadam v. Jalilvand*, Case No. CV 17-6547-R,

2018 WL 3490780, at *2 (C.D. Cal. July 18, 2018) (discussing state policy requirement).

Under the second requirement, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937. "This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Id.* In analyzing the state actor requirement, courts begin "by identifying the specific conduct of which the plaintiff complains." *Sullivan*, 526 U.S. at 51 (internal quotation marks and citation omitted). Then, courts generally utilize one of four tests to examine whether the state actor requirement is satisfied. These tests are the public function test, the joint action test, the state compulsion test, and the governmental nexus test. *Wright*, 48 F.4th at 1122.

"Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 924 (9th Cir. 2011) (internal quotation marks and citation omitted). "The public function test is satisfied only on a showing that the function at issue is both traditionally and exclusively governmental." *Id.* (internal quotation marks and citation omitted).

To establish joint action, a plaintiff must show willful, joint participation between the state and a private actor in which "the state has so far insinuated itself into a position of interdependence with the private [actor] that it must be recognized as a joint participant in the challenged activity." *Id*. at 926 (internal quotation marks and citations omitted). This test "can be satisfied either by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Tsao*, 698 F.3d at 1140 (internal quotation marks and citation omitted).

"The compulsion test considers whether the coercive influence or significant encouragement of the state effectively converts a private action into a government action." *Kirtley v. Rainey*, 326 F.3d 1088, 1094 (9th Cir. 2003) (internal quotation marks and citation omitted).

Finally, "the nexus test asks whether there is a such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Id.* at 1094–95 (internal quotation marks and citation omitted).

Here, Carter has not plausibly alleged that any of the alleged constitutional violations are attributable to a state policy. Indeed, Carter does not allege that Defendants acted pursuant to a right or privilege created by the state, or a rule of conduct imposed by the state. *See Lugar*, 457 U.S. at 937. For this reason alone,

the Court must dismiss Carter's claims. *See Sullivan*, 526 U.S. at 50 (noting the Supreme Court's "repeated insistence that state action requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor" (internal quotation marks and citations omitted)).

Even assuming Carter can meet the state policy requirement, he also has not alleged facts showing that any Defendant qualifies as a state actor. Carter alleges no facts suggesting that, in deciding whether to issue a cashier's check, Defendants were performing a traditionally and exclusively governmental function. *See Florer*, 639 F.3d at 924. Carter also alleges no facts suggesting that the state and these Bank of Hawaii employees acted jointly. *See Tsao*, 698 F.3d at 1140. Moreover, nothing in the Complaint suggests that the state somehow influenced, much less coerced, the actions of these three bank employees. *See Kirtley*, 326 F.3d at 1094. Finally, Carter alleges no facts establishing a nexus between the defendants' actions and the state. See *id.* at 1094–95. Indeed, the Complaint includes no allegations linking the state to any actions taken by these three bank employees.

Unless Carter can plausibly allege that Defendants acted pursuant to a state policy and should be treated as state actors, his claims cannot proceed. *See Tomel v. Hawaii*, No. Civ. No. 12-00047 LEK/BMK, 2012 WL 851639, at *4–5 (D. Haw. Mar. 12, 2012) (dismissing § 1983 claims because plaintiff failed to allege facts showing that Bank of Hawaii acted under color of state law); *Williams v. Bank of Am.*, No. 2:21-cv-1141-JAM-KJN PS, 2021 WL 2808511, at *3 (E.D. Cal. July 6, 2021) (dismissing § 1983 claims against a bank and its employees and agents because plaintiff failed to allege that they acted under color of state law), *report and recommendation adopted*, No. 2:21-cv-1141-JAM-KJN PS, 2021 WL 3514763 (E.D. Cal. Aug. 10, 2021); *Clark v. Wells Fargo Bank, N.A.*, No. 6:13-cv-01546-AA, 2014 WL 2998600, at *5–6 (D. Or. July 1, 2014) (dismissing § 1983 claims against bank because plaintiff "neglected to allege the requisite state action"), *aff'd sub nom. Clark v. Wells Fargo Bank*, 669 F. App'x 362 (9th Cir. 2016); *see also Dailey v. Bank of Am.*, 106 F. App'x 533, 533 (9th Cir. 2004) ("We conclude that the district court did not err in concluding that the Bank was neither a state actor nor acting under color of state law, and in dismissing [the plaintiff's] 1983 action."). If Carter can cure these flaws in his claims, he should also consider the following legal standards before submitting any amended pleading.

## C. Fourteenth Amendment Claims

### 1. Equal Protection Claims

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend XIV, § 1. To state an equal protection claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendants "acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1022 (9th Cir. 2020) (internal citations omitted). Alternatively, a plaintiff may state an equal protection claim in some circumstances by alleging that he "has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (citations omitted).

### 2. Due Process Claims

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In analyzing a procedural due process claim, courts ask two questions. First, courts determine whether the inmate was deprived of a constitutionally protected liberty or property interest. Second, courts examine whether that deprivation was accompanied by sufficient procedural protections. *See United States v. 101 Houseco*, LLC, 22 F.4th 843, 851 (9th Cir. 2022). In order to determine whether the procedural protections provided are sufficient at the

second step, we look to (1) the private interest affected; (2) the risk of an erroneous deprivation and the probable value of any additional or substitute procedural safeguards; and (3) the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

## IV. LEAVE TO AMEND

The Complaint is DISMISSED with leave to amend. Carter must file any amended pleading on or before June 12, 2023. Carter may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the Complaint. Claims that do not properly relate to those in the Complaint are subject to dismissal.

Carter must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii. Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form. *See* LR99.2(a). An amended complaint will supersede the preceding complaint. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).

## V.     28 U.S.C. § 1915(g)

If Carter fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.     CONCLUSION

(1) The Complaint, ECF No. 1, is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2).

(2) Carter must file any amended pleading on or before June 12, 2023.

(3) Failure to timely file an amended pleading may result in AUTOMATIC DISMISSAL of this suit without further notice, and Carter may incur a strike under 28 U.S.C. § 1915(g).

(4) ALTERNATIVELY, Carter may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

(5) The Clerk is DIRECTED to send Carter a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: May 19, 2023 at Honolulu, Hawaiʻi.



/s/ Derrick K. Watson
Derrick K. Watson
Chief United States District Judge

---

*Carter v. Bank of Hawaii President*; Civil No. 23-00215 DKW-KJM; **ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT WITH LEAVE TO AMEND**